IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

BILLY W. MCDONNOR                                            PLAINTIFF

              v.              Civil No. 2:10-CV-02132-JRM

MICHAEL J. ASTRUE, Commissioner of                           DEFENDANT
Social Security Administration

## MEMORANDUM OPINION

Plaintiff, Billy W. McDonnor, appeals the final decision of the Commissioner of Social Security Administration denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1]  The Court finds that substantial evidence supports the Commissioner's decision and therefore affirms.

## I.     Background

On March 14, 2008, Plaintiff protectively filed his applications for DIB and SSI pursuant to 42 U.S.C. §§ 416(i), 423(d), and 1381a.  (Tr. 9, 49).  Plaintiff initially claimed that he was disabled since January 1, 2007 due to arthritis in his back, shoulders, and neck.  (Tr. 96).  The plaintiff later claimed that his condition had worsened, including additional complaints of chronic chest pain, allergies, sleep problems, and syncope.  (Tr. 78, 88, 161, 174).  At the time of the onset date, January 1, 2007, Plaintiff was fifty-one years old with a ninth grade education. (Tr. 37, 101).  He is now fifty-five years old, and his past relevant work includes park maintenance and farm labor.  (Tr. 14, 49, 103).  According to Plaintiff's testimony, he worked for the City of Alma for about thirteen years as a maintenance worker but later worked on a chicken farm in 2005.  (Tr. 200, 201, 204).  Plaintiff worked at the chicken farm until 2007, at which

---

[1] Plaintiff seeks judicial review of the Commissioner's decision under 42 U.S.C. § 405(g).

point "it got to where [he] just couldn't do what [he] need[ed] to do."  (Tr. 201, 204, 205).

Plaintiff's initial application was denied, as was reconsideration of that application.  (Tr. 37).  Consequently, Plaintiff requested an administrative hearing, which was held on December 22, 2008.  (Tr. 188- 214).  Plaintiff testified and was represented by an attorney at the hearing, and a vocational expert ("VE") also testified.  On August 20, 2009, the Administrative Law Judge ("ALJ") issued his decision, finding that Plaintiff was not disabled through the date of his decision.  (Tr. 9-16).  On July 23, 2010, the Appeals Council later denied Plaintiff's Request for Review of the ALJ's decision, thus making it the final decision of the Commissioner.  (Tr. 2-4).

## II.    Medical History

Plaintiff has a history of pain in his shoulders, chest, back, legs, and feet, as well as a history of nicotine addiction.  (Tr 156).  Additionally, he complains of allergies and sleep difficulties which highlight his asthma.  (Tr 156).  Since the claimed onset date of January 1, 2007, the Plaintiff's earliest office visit in the transcript with his primary care physician, Dr. Robert Bishop at Alma Cornerstone Clinic, did not occur until May 24, 2007.  On that date, Dr. Bishop diagnosed plaintiff with chronic intermittent chest pain, chronic lower back pain, and allergies.  (Tr. 161).  Dr. Bishop prescribed Atenolol for high blood pressure and Lovastatin for high cholesterol, in addition to plaintiff's continued aspirin use for pain.  (Tr. 161).  Dr. Bishop directed plaintiff to return to the clinic three months later, but plaintiff was a "no show" for his August 24, 2007 appointment.  (Tr. 160-61).

On August 31, 2007, Plaintiff returned to Alma Cornerstone Clinic where he met again with Dr. Bishop.  (Tr. 159).  Dr. Bishop scheduled an electroencephalogram ("EEG") due to plaintiff's claimed blacking-out spells and episodes of psychogenic fugue .  Also at this visit,

Plaintiff indicated that he quit alcohol six months ago, and Dr. Bishop noted Plaintiff's range of motion ("ROM") was decreased by 10% due to his lumbar spine.  (Tr. 159).  Dr. Bishop only recommended that Plaintiff do a lumbar strained exam and continue using Advil and Tylenol for pain, and Plaintiff was instructed to return in two weeks.  (Dr. 159).

Dr. Westbrook conducted a disability determination on September 6, 2007.  (Tr. 139). The report notes that the frequency of Plaintiff's chest pain occurred once weekly.  (Tr. 140).  In this determination, Plaintiff's orthopedic ROM also fell within normal limits, although the ROM of the lumbar spine was 10% below normal, which is in accord with the August 31, 2007 visit to Dr. Bishop's office.  (Tr. 142).  Plaintiff's neurological functions and limb functions were all normal or within normal limits.  (Tr. 143).  Plaintiff's neck was normal, lungs normal, and his heart had regular rate and rhythm.  (Tr. 156).  Plaintiff's lumbar spine did have disc space narrowing in L5-S1 and osteophytes at L3-L5.  (Tr. 144).

Plaintiff vistited Dr. Bishop again on September 20, 2007.  (Tr. 158).  Records from that visit indicate that Plaintiff had an EEG on September 10, 2007, but the EEG was normal.  (Tr. 158).  Dr. Bishop's impressions were that Plaintiff had rare episodes of psychogenic fugue from an unexplained cause but that the condition was stable, and that Plaintiff had chronic lower back pain.  (Tr. 158).  Dr. Bishop recommended Plaintiff perform lumbar stretching, continue Advil & Tylenol for pain, and start taking Soma (a muscle relaxer), and he also scheduled an appointment for Plaintiff three months later.  (Tr. 158).

Plaintiff's next visit, however, didn't occur until May 16, 2008, as a follow-up visit for coronary artery disease ("CAD"), high cholesterol, chronic lower back pain, and neurogenic claudication 2nd to lumbar spondylosis.  (Tr. 157).  Plaintiff reported that radicular pain occurred

-3-

only when he exerted himself, such as walking, and that his chest pain only occurs occasionally since being placed on Lovastatin.  (Tr. 157).  Bishop noted that Plaintiff had a resting hand tremor, and Plaintiff stated he was cutting back on his drinking and smoking.  Dr. Bishop was under the impression that Plaintiff had neurogenic claudication 2nd to lumbar spondylosis, chronic left shoulder bursitis, and CAD.  (Tr. 157, 164).  Dr. Bishop recommended that Plaintiff perform ROM exercises and continue taking Tylenol because it seemed effective.  (Tr. 157).  Dr. Bishop indicated Plaintiff's next appointment should be in six months.  (Tr. 157).

On August 11, 2008, Plaintiff returned to Alma Cornerstone Clinic.  (Tr. 166).  At that time, Plaintiff indicated he smoked three or four packs of cigarettes per day.  (Tr. 166).  Dr. Bishop noted that Plaintiff had degenerative disc disorder ("DDD") and again noted his shoulder bursitis.   However, Dr. Bishop only ordered blood glucose tests and a lumbar puncture for the Plaintiff.  (Tr. 166).  He also noted that Plaintiff's cholesterol was high but that Plaintiff was on Lovastatin, and Plaintiff's chronic obstructive pulmonary disease ("COPD") was "stable."  (Tr. 166).

## III.   <u>Applicable Law</u>

In reviewing a Social Security proceeding, this Court's role is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003).  "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion."  *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)).  To determine whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that

-4-

supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). After conducting this review, if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Commissioner's] findings," then the Court must affirm. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for DIB or SSI, the burden falls on the claimant to establish that he is unable to engage in any substantial gainful activity ("SGA") due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1381c(a)(3). In addition to this duration requirement for disability, the Commissioner applies a five-step sequential evaluation process to all disability claims: (1) the claimant will be denied benefits if he is involved in SGA regardless of medical condition, age, education, or work experience; (2) the claimant must have a severe impairment that significantly limits his physical or mental ability to perform basic work activities; (3) benefits are awarded if the claimant's impairment meets or equals a disabling impairment listed in the Code of Federal Regulations; (4) if no Listing is met, benefits are denied if the claimant has sufficient residual functional capacity ("RFC") to perform past relevant work; and (5) benefits are awarded unless the Commissioner can prove that the claimant is able to make an adjustment to other work in light of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4).

**IV.    Discussion**

The ALJ determined that Plaintiff passed steps one through four of the evaluation process, finding that Plaintiff has severe impairments of DDD and COPD. (Tr. 11-16). The ALJ

also found that Plaintiff has the RFC to perform light work except that he is limited to frequent climbing, balancing, kneeling, and crawling and occasional stooping and crouching.  (Tr. 12-14). Although the ALJ determined that Plaintiff's RFC prevents him from performing any past relevant work, the ALJ concluded that there are jobs "in significant numbers in the national economy" within the scope of Plaintiff's RFC.  (Tr. 15-16).  Plaintiff argues that the ALJ erred in: (1) failing to consider all of Plaintiff's impairments in combination; (2) its analysis and credibility findings regarding Plaintiff's subjective complaints of pain; (3) finding that Plaintiff retains the RFC to perform light work; and (4) failing to fully and fairly develop the record.  The Court disagrees and will address Plaintiff's arguments in turn.

1.      **The ALJ Erred by Failing to Consider the Combined Effect of Plaintiff's Impairments**

Plaintiff first argues that the ALJ did not consider the claimant's impairments in combination, in violation of *Anderson v. Heckler*, 805 F.2d 801 (8th Cir. 1986) (requiring the claimant's impairments be considered in combination).  *See also* 42 U.S.C. § 423(d)(2)(B). Notably, the ALJ repeatedly used language which demonstrates consideration of the combined effect of Plaintiff's impairments.  *See Hajek v. Shalala*, 30 F.3d 89, 92 (8th Cir. 1994) (upholding ALJ's opinion where ALJ listed all of the claimant's impairments and used language such as "the evidence *as a whole* does not show that the claimant's *symptoms* . . . preclude his past work").

Here, the ALJ repeatedly recognized her duty to consider all of Plaintiff's impairments in combination when setting forth the applicable law.  The ALJ noted the duty at steps two and three, as well as in Plaintiff's RFC determination.  At step two, the ALJ noted she must consider whether Plaintiff "has a medically determinable impairment that is severe or a *combination of*

-6-

*impairments* that is severe." (Tr. 10) (emphasis added). At step three, the ALJ stated she "must determine whether the claimant's impairment *or combination of impairments* meets or medically equals" a listed impairment. (Tr. 10) (emphasis added).

In addition, the ALJ separately discussed Plaintiff's impairments and subjective complaints of pain. Nevertheless, the ALJ found that "[Plaintiff's] chest pain, neck pain, bursitis in his shoulders, allergies, sleep problems, and syncope" did not prevent Plaintiff from performing light work with additional limitations because they "are not severe *impairments*." (Tr. 12) (emphasis added). "To require a more elaborate articulation of the ALJ's thought processes would not be reasonable." *Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1992) (quoting *Gooch v. Secretary of H.H.S.*, 833 F.2d 589, 592 (6th Cir. 1987), *cert. denied*, 484 U.S. 1075, 108 S.Ct. 1050, 98 L.Ed.2d 1012 (1988)).

### 2.    The ALJ Erred in its Analysis and Credibility Findings Regarding the Claimant's Subjective Complaints of Pain

Plaintiff next argues that the ALJ erred in its analysis and credibility findings of Plaintiff's subjective complaints of pain. In evaluating a claimant's subjective complaints, the ALJ must consider five factors: (1) claimant's daily activities; (2) duration, frequency, and intensity of pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). Thus, the ALJ may discount the claimant's subjective complaints if they are inconsistent with the evidence as a whole. *See, e.g., Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001) (upholding ALJ's determination where claimant's activities were inconsistent with her subjective complaints of pain). Finally, "[t]he ALJ need not explicitly discuss each *Polaski*

factor." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004) (citing *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)).

Indeed, the ALJ properly noted the lack of more frequent and substantive medical treatment in assessing Plaintiff's credibility.  (Tr. 13-14).  Although Plaintiff received some mild muscle relaxers for pain and inflammation, he primarily received conservative treatment for his back pain, such as a lumbar exercises and over-the-counter pain medication.  In addition, he received no treatment for his alleged symptoms due to COPD, which was even diagnosed as "stable" by his treating physician.  (Tr. 14, 159, 166).  "If an impairment can be controlled by treatment or medication, it cannot be considered disabling."  *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) (internal quotations omitted).  *See also* 20 C.F.R. §§ 404.1530(b), 416.930(b) ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled . . .").

The fact that Plaintiff smokes three-fourths a pack of cigarettes per day certainly does not help his COPD situation.  (Tr. 166).  In addition to the results of objective medical tests, an ALJ may properly consider the claimant's noncompliance with a treating physician's directions. *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001).  These directions may include failing to take prescription medications, seek treatment, or quit smoking.  *See Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (upholding ALJ's consideration of claimant's failure to take prescription medications); *Comstock v. Chater*, 91 F.3d 1143, 1146-47 (8th Cir. 1996) (failure to seek treatment); *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997) (failure to quit smoking).

In addition, despite Plaintiff's alleged onset date of January 1, 2007, the record is void of any attempts by Plaintiff to seek treatment prior to May 24, 2007.  (Tr. 14, 161).  In general, the

-8-

failure to obtain follow-up treatment indicates that a person's condition may not be disabling or may not be as serious as alleged.  *See Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995) (holding "[g]iven his alleged pain, Shannon's failure to seek medical treatment may be inconsistent with a finding of disability").  Thus, there was substantial evidence for the ALJ to doubt Plaintiff's complaints of disabling symptoms considering Plaintiff failed to seek more frequent and substantive treatment.  *See Benskin v. Bowen*, 830 F.2d 878, 884 (8th Cir. 1987) (upholding ALJ's consideration of claimant's failure to seek medical attention where claimant's measures to relieve pain were not indicative of severe, disabling pain).

Moreover, Plaintiff's activities belie his subjective complaints, which the ALJ considered and did not find credible.  (Tr. 13).  Plaintiff reported that he prepared meals, mowed his yard, and took care of his pets.  (Tr. 117-18).  He also stated that he watered his horses, drove his wife to the store, and helped with shopping.  (Tr. 207).  Although he reported that he could only sit for ten minutes without pain, Plaintiff nevertheless stated he could read a 300-page book one day if he was interested in the book.  (Tr. 206).  Moreover, despite Plaintiff's determined impairment of COPD, he reported smoking three-fourths a pack of cigarettes per day.  (Tr. 166).  Plaintiff's activities were properly considered by the ALJ as a factor in her credibility determination.  *See Steed v. Astrue*, 524 F.3d 872, 875 (8th Cir. 2008) (claimant performed houseworked, cooked, and drove); *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ALJ properly discounted claimant's subjective complaints on basis that claimant was able to care for child, drive car, and sometimes go to grocery store); *Johnson v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated her pain did not interfere with her ability to concentrate).  Therefore, the ALJ correctly determined that Plaintiff's subjective complaints were

not of such persistence and severity as to be disabling, based on the lack of supportive medical evidence, the conservative nature of his treatment, and his daily activities.  (Tr. 13-14).

### 3.      The ALJ Erred by Finding the Claimant Retains the RFC to Perform Light Work

Plaintiff also argues that the ALJ erred by determining that Plaintiff has the RFC to perform light work.  RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1).  A disability claimant has the burden of establishing his or her RFC.  *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).  "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).

Despite Plaintiff's physical impairments, the ALJ determined that Plaintiff could perform light work—not that Plaintiff could perform any work.  Substantial evidence in the record as a whole supports the ALJ's finding.  Dr. Bishop's impression of Plaintiff at his May 24, 2007 visit was that Plaintiff suffered from chronic intermittent chest pain and chronic low-back pain.  (Tr. 161).  The report also shows that Plaintiff suffered from allergies, yet Dr. Bishop—Plaintiff's treating physician—never prescribed anything to treat these allergies.  (Tr. 139, 157-61, 66).  Instead, he simply prescribed Plaintiff Atenolol for chest pain and Lovastatin for high cholesterol.  (Tr. 161).

Plaintiff later returned to Dr. Bishop and reported three episodes of syncope between

April 2007 and August 2007.  (Tr. 159).  However, an EEG test on September 10, 2007 showed normal results without any evidence of focal abnormality or epileptiform activity.  (Tr. 175). Plaintiff reported that he had suffered no further spells at his visit with Dr. Bishop on September 20, 2007.  (Tr. 158).  In addition, the only recommendations by Dr. Bishop addressing Plaintiff's back pain were to perform lumbar spine stretching exercises and take Advil or Tylenol.  (Tr. 158).  By May 16, 2008, Plaintiff returned for a follow-up visit with Dr. Bishop regarding his high cholesterol levels and chronic lower-back pain.  (Tr. 157).  Nevertheless, Dr. Bishop's prescription was for Plaintiff to continue performing exercises and taking Tylenol for the lower-back pain.  (Tr. 157).

By August 11, 2008, Dr. Bishop noted that Plaintiff was smoking three-fourths a pack of cigarettes per day.  (Tr. 166).  Dr. Bishop's impression was that plaintiff suffered from DDD, COPD, and left shoulder bursitis.  (Tr. 166).  On September 6, 2007, Dr. Westbrook performed a physical consultative examination at the Social Security Agency's request.  (Tr. 139-46).  The examination echoed many of the reports by Plaintiff's treating physician, including that Plaintiff had a normal ROM of his spine, with just a slight limitation in his lumbar spine.  (Tr. 142).  In addition, Plaintiff had normal ROM of his arms and legs.  (Tr. 142).  Dr. Westbrook also found that Plaintiff had muscle weakness or atrophy, despite an abnormal negative-leg-raise, and that Plaintiff had normal gait, coordination, and limb function.  (Tr. 142-43).  An x-ray examination of Plaintiff's lumbar spine revealed disc space narrowing at the L5-S1 level and osteophytes from L3 through L5.  (Tr. 144).  Dr. Westbrook's diagnosis of Plaintiff were that he suffered from chronic back pain, chest pain, nicotine addiction, and insomnia.  He also noted that Plaintiff had a history of asthma.  (Tr. 145).  Notwithstanding this diagnosis, Dr. Westbrook assessed no

-11-

limitations on Plaintiff's ability to walk, stand, sit, lift, carry, handle, or finger.  (Tr. 145).

Although the consultative physician didn't seem to believe Plaintiff suffered from any limitations, a non-examining physician, Dr. Davidson, felt that Plaintiff had some limitations. (Tr. 147-54).  In her "Physical Residual Capacity Assessment," Dr. Davidson found Plaintiff capable of performing light work with some limitations.  (Tr. 148).  These limitations were that Plaintiff could occasionally stoop and crouch; frequently climb ramps, stairs, ladders, ropes, and scaffolds; and frequently balance, stoop, crouch, and crawl.  (Tr. 149).  Dr. Davidson further found no manipulative or environmental limitations.  (Tr. 150-51).

Plaintiff's subjective complaints of disabling back pain were unsupported by the objective evidence in the record.  First, the ALJ noted that Plaintiff had normal ROM in his spine despite the DDD diagnosis.  The limitation in Plaintiff's lumbar spine was slight, and Plaintiff had normal ROM in his arms and legs.  (Tr. 13, 142).  Dr. Bishop's treatment of Plaintiff's back impairments

was done by conservative measures, such as exercises and over-the-counter medication.  The ALJ correctly pointed this out and considered it in her RFC determination.  (Tr. 13, 159).  In August 2008, Plaintiff even reported that the medication had been helping with his back pain. (Tr. 13, 166).  Finally, the ALJ noted that Dr. Bishop did not suggest any additional tests or more serious treatment options, such as a magnetic resonance imaging scan ("MRI") or a CT scan. The ALJ also correctly noted that Dr. Bishop did not make any suggestions of the need to see an orthopedic specialist for more intense treatment or potential back surgery.  (Tr. 13-14, 157-61, 166).

Likewise, the ALJ's analysis concerning Plaintiff's COPD was correct.  Foremost,

-12-

Plaintiff's failure to allege COPD as an impairment in his application for benefits is indeed a significant fact.  The ALJ properly noted this and also pointed out that Plaintiff did not raise it in the administrative hearing either.  (Tr. 14).  *See Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001) (finding Plaintiff's failure to allege depression in her disability application as significant).  Moreover, the ALJ properly considered that the record is void of any evidence of Plaintiff being on treatment for a respiratory disorder or that he had any kind of episodic respiratory disease with exacerbations of symptoms requiring intensive treatment, such as intravenous bronchodilator or prolonged inhalational bronchodilator therapy.  (Tr. 14).  The ALJ further—and correctly—noted that the record contains no chest x-ray examinations, or any other imaging technique or spirometric pulmonary function tests, in order to evaluate the severity of Plaintiff's *ex post facto* allegation of COPD.  As previously discussed, Plaintiff's smoking three-fourths a pack of cigarettes per day certainly did not help his COPD situation.  (Tr. 14, 166).  Finally, Plaintiff's lung function appeared normal at his examination by Dr. Westbrook, and he did not mention any respiratory complaints to Dr. Westbrook other than his history of asthma.  (Tr. 14, 139-46).

Regarding Plaintiff's CAD and arthritis, the ALJ correctly evaluated the impact of these impairments on Plaintiff's RFC.  As to Plaintiff's CAD, Dr. Bishop prescribed Plaintiff with Atenolol for the chronic chest pain, and the medical evidence indicates that Plaintiff's CAD has stabilized.  (Tr. 11-12, 166).  In addition, there is no objective evidence in the record that Plaintiff's CAD limited his ability to work or perform daily activities.  This lack of evidence is also present regarding Plaintiff's complaints of arthritis in his neck and shoulders, which the ALJ correctly considered.  (Tr. 12).  As discussed in the next section, the ALJ was under no obligation or duty to investigate these matters further by sending Plaintiff out for further testing.  What the

-13-

record does indicate is that Plaintiff's physical examination with Dr. Westbrook reflected that he had normal ROM in both of his shoulders and in his cervical spine. (Tr. 142). Plaintiff's neurological examination and limb function were also normal. (Tr. 143). Finally, Plaintiff made no complaints of any problems with his neck or shoulders at the time of his exmaination. (Tr. 139-46). This evidence was properly considered by the ALJ and is a substantial basis for the ALJ's RFC determination.

Lastly, the ALJ's consideration of Plaintiff's allergies, sleep problems, and syncope spells was also appropriate in her RFC determination. First, the ALJ properly noted Plaintiff took medicine for his allergies but that there was no indication that they caused any significant limitation of his activities. (Tr. 12). Second, Plaintiff never complained to his treating physician about his alleged sleep problems, nor does the record indicate that Plaintiff tried any over-the-counter sleep aids. (Tr. 12). Finally, Plaintiff's EEG results after the alleged syncope episodes were normal, and Plaintiff reported no further episodes. (Tr. 12, 158-59, 175). Consequently, the evidence of the record does not support Plaintiff's subjective complaints and the ALJ's RFC determination was appropriate.

**4.      The ALJ Erred by Failing to Fully and Fairly Develop the Record**

Finally, Plaintiff argues that the ALJ erred in failing to fully and fairly develop the record to determine the extent and limiting effects of Mr. McDonnor's arthritis, neck pain, shoulder pain, allergies, sleep difficulty, or syncope. While it is true that the ALJ has a duty to develop the record, that duty is only to develop a reasonably complete record. *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994). This duty to develop a *reasonably* complete record reflects that "[t]he social-security claimant bears the burden of proving disability." *Id.* at 830 (citing *Locher v.*

-14-

*Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992)).  Because "the ALJ is under no duty to provide continuing medical treatment for the claimant," Plaintiff's medical records with Dr. Bishop and the consultative examination by Dr. Westbrook provided sufficient evidence for the ALJ to reach a decision.[2]  *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003) (citing *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000)).

Notably, Plaintiff has been to a physician at least seven times since his alleged onset date. (Tr. 139, 157-61, 166).  Six of these visits were even with his treating physician, Dr. Bishop, which belies Plaintiff's argument that he was unable to afford treatment.  (Tr. 157-61, 166). Even if this were the case, Plaintiff could have sought low-cost or no-cost treatments.  Without evidence that Plaintiff sought such treatment or was denied treatment due to financial constraints, Plaintiff's argument fails.  *See Clark v. Shalala*, 28 F.3d 828, 831 n.4 (8th Cir. 1994); *Murphy v. Sullivan*, 953 F.2d 383, 386 (8th Cir. 1992).

## V.  <u>Conclusion</u>

Having carefully reviewed the record, the Court finds that substantial evidence supports the ALJ's determination at each step of the disability evaluation process.  The ALJ's decision is affirmed, and Plaintiff's complaint is therefore dismissed with prejudice.

ENTERED this 8th day of July 2011.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF U.S. MAGISTRATE JUDGE

---

[2]The consultative examination by Dr. Westbrook is especially indicative of this point, as it echoed many of the same conclusions drawn by Plaintiff's treating physician, Dr. Bishop.